THE MORRIS AND ESSEX RAILROAD COMPANY, APPELLANTS, AND JONATHAN BONNELL AND OTHERS, APPELLEES.

1. In a case where extrinsic circumstances may properly be introduced to aid in the construction of a deed, a new trial should be granted when it appears such circumstances were not fully before the court and jury, and the damages awarded by the jury were excessive.
2. Matter of practice—as to opening and reply.

On case certified from the Union Circuit to this court for its advisory opinion.

The facts are so fully given in the opinion of the court as to render any preliminary statement of them unnecessary.

The argument was had before BEASLEY, CHIEF JUSTICE, and BEDLE and SCUDDER, Justices.

For appellants, *Thomas N. McCarter.*

For appellees, *B. Williamson.*

BEDLE, J.   This is an appeal from the award of commissioners, made August 8th, 1867.   The land taken belongs to the heirs of Jonathan C. Bonnell, deceased, and is situate at Summit, in Union county.   The verdict of the jury was $7,200.   A rule to show cause was allowed the company at the circuit, and certain questions arising thereon have been

certified for the opinion of this court. The first has reference to the construction and application of a deed from Jonathan C. Bonnell to the company, dated May 15th, 1837. The company constructed their main track at the Summit through the Bonnell lands, under this deed and another of like terms. By virtue of a supplement to their charter they have condemned other land, being the land in question, now belonging to the heirs of J. C. Bonnell, for the purpose of widening their road for a double track, and to procure gravel. The land condemned begins on the line of Maple street, distant forty-three feet on a course south twenty-three degrees west from the centre, between the rails of the old track; thence runs in a definite southerly line for a distance of two thousand and five feet, more or less; and then runs northwesterly, following "the boundary line between the lands formerly owned by Jotham Potter, now owned by the heirs of J. C. Bonnell and the Morris and Essex Railroad Company, to the place of beginning." This is a long, narrow strip, lying between the southerly line as fixed, and about which there is no question, and the boundary line between the lands of the company and the appellees. This boundary line is in dispute, and depends chiefly, if not entirely, upon the deed of May 15th, 1837. The company claim that the quantity in the strip is about nine-hundredths of an acre, while the appellees claim that it is one acre and fifty-six-hundredths. The construction and application of that deed are necessary to be determined in order to ascertain the quantity. The deed is for the *route* of the road through the Bonnell lands, and limits the width in these words: "Taking so much in width as will be necessary to construct said road." The quantity estimated by the company is on the basis of an allowance of four rods (sixty-six feet) for the width of the road, they claiming that the deed should be co-extensive, at least, with the full width named in the charter. The estimate of the Bonnells is on the basis of three rods for the whole distance. The description in the deed being indefinite, a resort must necessarily be had to extrinsic evidence to

ascertain its precise application. The charter was passed January 29th, 1835, and authorized the company to survey, lay out, and construct a railroad or lateral roads from Morristown to intersect the New Jersey Railroad, not exceeding sixty-six feet wide, with as many sets of tracks and rails as they may deem necessary. That was the extreme width authorized for the route of the road. It was optional with the company whether, in constructing their road, to have a single or double track. They could take the whole sixty-six feet, or less, under their charter. A road with either a single or double track would be regarded as constructed to completion in the sense of the charter.

Like all railroads in this state up to a few years since, the company determined to construct a single track road from Morristown to Newark, and accordingly constructed it, the same remaining such for nearly or about thirty years. There is nothing in the deed to indicate an intention that it should extend to the full width of the sixty-six feet, and the language and relation of the deed to the circumstances, as they existed at the time of its execution, justified the court in charging generally " that the width must be ascertained by reference to what was necessary to the convenient and proper construction of the railroad the company was then engaged in constructing, having regard to the situation and surface of the ground over which it was located," and assuming that the company were then engaged in constructing a single track road—in further charging more specifically " that the deed conveyed to the company a strip of such a width as was necessary to the convenient and proper construction and use of a single track railroad." These instructions were substantially correct, subject, however, to this qualification : the road from Maple street runs for about four hundred feet on, or nearly on, a surface grade; and beyond that, towards the east, the rest of the distance, being about sixteen hundred feet, it goes through a cut, the depth of which is about four feet at the commencement, and ranging on up to about twenty feet at the end. The evidence shows

that in order to have the slopes of proper inclination as usually constructed, there should be, in addition to the road-bed, an allowance of one and a half feet on each side for every foot in depth of the cut, and that the road-bed, in the cut and outside of it, should be of the width of seventeen feet at least for a single track road, the same including ditches on each side. Taking the road-bed at seventeen feet, and calculating one and a half feet to one for the cut, the width for the cut at its deepest parts would exceed the sixty-six feet, while in other parts it would be less. In further applying the deed, the court charged that it "conveyed a strip widening as going east, according to the depth of the cut, until at the extreme easterly end, where the cut is twenty feet six inches deep, the width to furnish the road-bed, ditches, and for necessary slopes would be forty feet three inches south of the centre line." This would make eighty feet and six inches for the whole width at that point. That is more than the full width allowed for the route of the road in the act of incorporation. The language of the deed should not be held to embrace more land than the company had power to take for the route. It being general, must be construed within the scope of the powers of the company then existing. *Morris and Essex* v. *Sussex R. R. Co.*, 5 *C. E. Green* 542. Subject to this qualification, and except so far as the deed may have been practically located, the contruction and application of the same are as stated in the charge. It is well to remark, however, that in deciding what is convenient and proper for the road and its use, that a regard should be had to such road lines as are reasonable and practicable, and fit, in the nature of things. To illustrate: the cut may be of irregular depths, but it does not follow that the lines should be regulated strictly by the immediate width, leaving them to run out and in accordingly. The lines should be as regular as a reasonable regard to the nature of the ground, the necessities, convenience, and use of the road-bed, and the fitness of things, would require; and this should apply not only to the cut, but also to the whole distance in

question, looking at the relation of one part of it to the other. Uniformity of width should be observed so far as practicable, and where differences in width become necessary, the lines should be fixed so as to give all the room required for the road, and with a reasonable regard to regular widths, not strictly following the sinuous courses that would immediately result from the cuts, embankments, and mode of. construction of the road.

This answers the first point submitted, in relation to the deed, unaffected by any question of practical construction and location. That question is in the case, and the judge evidently considered the width fixed for some distance from Maple street, being at the station, by the location of other deeds from Bonnell to the company, and by other acts of the parties interested. I have carefully examined the deeds and the evidence, and am unable to say with any accuracy how far the width, and how much in width, should be treated as fixed by practical construction and location. Neither can I tell, from the meagre state of the evidence, in what precise way the route was occupied by switches and sidings before the double track was laid. Under this embarrassment, these matters must be left to the developments of a new trial, as one will be necessary for excess of damages, and without determining them, it is impossible to answer another question certified, whether it was inapplicable in this case to charge, as requested, that the appellants were not limited at a station, under any construction of their deed, to the mere width of a track, but were entitled to enough land for sidings, switches, and other purposes usual and convenient for railroads at their stations. The station is on the Bonnell lands, and has been there from the completion of the road. In confining the deed in this case to a single track road, that would not necessarily mean merely the width for one track the whole distance. Whatever sidings, switches, and other works a single track road would require, as proper and convenient, at such a station in the line of the route, in order to completely construct such a road, must be consid-

ered as necessary in the construction, within the contemplation of the deed. It was remarked by the judge that, as a general rule, the request was correct, but was inapplicable, for the reason stated. The correctness of that is left unanswered. This deed is peculiarly one for the application of the doctrine of practical location, and the general principles referred to are liable to be controlled by it.

The question concerning the value of the land and damages may be shortly answered by the remark that, taking the quantity as claimed by the appellees, the amount of the verdict was excessive, and for that reason a new trial should be had.

A question of practice was also submitted, whether the appellees—the land-owners—should have the opening and reply in the management and conduct of the case. This is a matter of discretion, but it is important to have uniformity of practice. The land-owner being entitled to the value and damages, and the issue being only of amount, the affirmative of it is more properly upon him, if he appears, than on the company. That was the ruling at the circuit in this case, and I think should be followed.

BEASLEY, CHIEF JUSTICE, and SCUDDER, Justice, concurred.